Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 7565 | **DATE** | 6/24/2002 |
| **CASE TITLE** | Edwards vs. Miller | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Before the court is Defendant's motion for summary judgment [50-1], brought pursuant to Federal Rule of Civil Procedure 56. Defendant's motion is granted. It is so ordered. The September 11, 2002 trial date is stricken.

*/s/ Charles R. Norgle*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 25 2002 | |
| | Notified counsel by telephone. | | date docketed | 68 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN EDWARDS | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 97 C 7565 |
| v. | ) |
| | ) HONORABLE CHARLES R. NORGLE |
| | ) |
| DANIEL J. MILLER | ) |
| Defendant. | ) |

**OPINION AND ORDER**

DOCKETED JUN 2 5 2002

**Charles R. Norgle Sr., District Judge**

Before the court is Defendant's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. For the following reasons Defendant's motion is granted.

## I. BACKGROUND [1]

This case arises out of a long history of incompetence and mismanagement, which was exacerbated by ineffective communication between Plaintiff John Edwards ("Edwards"), the Illinois State Board of Education ("ISBE"), and Daniel E. Miller ("Miller") the named Defendant. Edwards filed his complaint on October 10, 1997, alleging that he was discriminated against and ultimately terminated from his employment based on his race, in violation of 42 U.S.C. § 1983, 42 U.S.C. § 2000e et seq. ("Title VII"), and supplemental state claims.

In 1988, Edwards was hired by the ISBE. In 1995, Edwards held the position of coordinator for the Illinois Homeless Education program. His duties included the oversight of federal and state grants given to local schools in support of educating homeless children and adults.

---

[1] All facts are taken from the parties Local Rule 56.1 statements and accompanying briefs. Disputed facts are noted in the text.

In the summer of 1995, there was a restructuring of the ISBE. Miller was promoted to divisional administrator. Miller's duties included supervising the homeless program that Edwards ran. Edwards was given the title of principal consultant for the homeless program, but his substantive duties did not change.

The working relationship between Edwards and Miller was rocky from the beginning. Just as Miller assumed his position as divisional administrator, Edwards was attempting to coordinate a convention for the National Association of State Coordinators of the Education of Homeless Children and Youth ("NASCEHCY"). The NASCEHCY is a national private organization with individual members. The ISBE is not a member of NASCEHCY, but Edwards is a member. Every year NASCEHCY picks a city to host their national convention. In 1995, NASCEHCY chose Chicago to be the host city, with Edwards in charge of coordinating the event. Edwards chose the hotel, the Hyatt Regency, the vendors, and the merchandise necessary for the event, with the belief that approximately 1,000 people would attend the conference. Edwards' involvement in coordinating the conference was not a function of his job; it was purely an outside interest in which he was participating. The information that Edwards was providing to Miller about his role in the convention and the role of the ISBE was sparse at best.

Both parties had inconsistent views at to what ISBE's role was to be regarding the conference. Miller believed that the ISBE's role would be limited to that of a co-host to the event, as it had been to other conventions in the past. Edwards believed, without more, that ISBE would be a co-sponsor to the convention and that it would help defray the cost of the conference by providing funding for several costly expenditures. Both parties were in agreement that the ISBE

2

would pay for some expenditures if funding was available and with the approval of the Department of Education ("DOE").

The attendance for the convention was dismal. Of the 1,000 people Edwards had projected would attend between September 23, 1995, and September 27, 1995, approximately only 400 people attended, leaving large bills for grossly overestimated expenses. NASCEHCY did not have the money to pay all of the outstanding bills and began leaning heavily on representations made by Edwards that ISBE would pay a sizeable amount of the outstanding debts. Unaware of the representations made by Edwards, ISBE began receiving invoices requesting payment for services rendered at the conference. Edwards was attempting to get the ISBE to pay for items such as t-shirts, tote bags, and part of the Hyatt Regency hotel bill, without going through the regular state procedures for state pay-outs. Even items that the ISBE had agreed to pay were being grossly abused.

At one point prior to the convention, Edwards asked Miller if he could receive stipends to pay for 20 people who would be working at the conference. Miller advised Edwards that he would agree if Edwards would get approval from the DOE for the stipends. The DOE approved stipends for the 20 people. After the conference was over, Edwards requested stipends for 47 people. This is indicative of how the entire process involving the conference was handled. The final bill ISBE was forced to pay reached approximately $70,000.00.

Frictions developed. Miller began questioning Edwards about how he was handling his job functions. One several occasions, Miller told Edwards that he needed to improve communications and organization. Miller was receiving complaints about Edwards' activities, such as using his position to influence other people's decisions on hiring, and their use of funds that the government was providing. There was also an allegation that Edwards falsified applications so as to make it look

3

like they were received within the allotted filing date. With all of these problems being associated with Edwards, in October Edwards received a bad review from Miller. Although this was the first review in which Edwards was not awarded a satisfactory grade, on several previous reviews he was told that his communication skills and his organizational skills needed improvement.

In December of 1995 Miller met with human resources to discuss having Edwards fired. On March 15, 1996, after an extensive fact finding mission was completed, Edwards was sent a letter outlining the specific charges against him. The charges were:

1. Interference with personnel matters of a grantee in Williamson County;
2. False statements and other improprieties regarding Pembroke and Pleasant Hill school district grant applications;
3. Inconsistencies of facts and actions in connection with NASCEHCY conference;
4. Over-commitment of ISBE grant money for NASCEHCY conference without authorization;
5. Substantial cost to the ISBE because of conference overspending;
6. Poor reflection on the ISBE and [Edwards] because of conference mismanagement and serious overspending;
7. Misuse of ISBE tax exemption in connection with NASCEHCY conference;
8. (Withdrawn);
9. False and misleading statements in connection with $3,000 in start up money for NASCEHCY conference;
10. Conversion of NASCEHCY start up money for own purposes;
11. (Withdrawn);
12. Allowing more than twenty persons to attend the NASCEHCY conference under ISBE stipends.

(See Def.'s Local Rule 56.1 statement pg 3.) On March 25, 1996, Edwards was suspended. Edwards was officially terminated on August 8, 1996.

Unhappy with his termination, Edwards filed a grievance against the ISBE and in accordance with the terms of his employment contract sent the grievance to arbitration. An arbitrator found that "[d]ischarge [was] too severe a penalty for the Grievant's offense here when the seriousness of the

4

offense is considered along with the Grievant's length of service with the employer." (Pl's. Resp. Ex. B pg. 82.) The arbitrator reversed Edwards termination, awarding him reimbursement for all earnings and benefits lost as a result of the termination, minus one day's pay. The arbitrator found that the ISBE had just cause for suspending Edwards for one day. Yes, one day.

After receiving the decision of the arbitrator, Edwards brought suit against Miller alleging that he was discriminated against and ultimately terminated from his employment based on his race, in violation of 42 U.S.C. § 1983 (Count I), 42 U.S.C. § 2000e *et seq.* ("Title VII") (Count II), and supplemental state claims (Count III). Miller has now filed a motion for summary judgment pursuant to Rule 56, which the court will address.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999); see also Shank v. William R. Hague, Inc., 192 F.3d 675, 682 (7th Cir. 1999) (stating that a party opposing summary judgment must present "what evidence it has that would convince a trier of fact to accept its version of events.") A defendant is entitled to put the plaintiff to his proofs and demand a showing of the evidence. See e.g. Navarro v. Fuji Heavy Industries, Ltd., 117 F.3d 1027, 1030 (7th Cir. 1997). If the plaintiff fails to come up with the required proof, the defendant is entitled to summary judgment. See id. It bears

5

repeating that the plaintiff must present evidence, rather than speculation and conclusions without factual support. See Rand v. CF Industries, Inc., 42 F.3d 1139, 1146-47 (7th Cir. 1994). "In deciding a motion for summary judgment, the court will conclude that there is no genuine issue as to any proposed finding of fact to which no response is set out." Hartley v. Wisconsin Bell, Inc., 124 F.3d 887, 890 (7th Cir. 1997); Fed.R.Civ.P. 56(e); Local Rule 56.1.

Under Local Rule 56.1, the court deems admitted all statements of fact that Miller presents and supports with admissible evidence, to which Edwards fails to respond. The local rule reads:

> "Each party opposing a Rule 56 motion shall serve and file, [inter alia,] . . . a concise response to the movant's statement that shall contain: (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon . . . . All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."

L.R. 56.1(b)(3). "In short, the Local Rule 'requires both denial and support for that denial.'" Brown v. Ford Motor Co., 96 F. Supp. 2d 813, 814 (N.D.Ill. 2000) (quoting Schulz v. Serfilco, Ltd., 965 F.2d 516, 519 (7th Cir. 1992)). "An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission." Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 871 (7th Cir. 2000) (additional citations omitted).

In this instance, Edwards has failed to properly respond to a vast majority of the factual statements set forth by Miller. Edwards' response to approximately 90% of the factual statements reads:

> "Deny on the basis of relevancy. Theses are not relevant, because Arbitrator Jay E. Grenig in the matter of the arbitration proceedings between Illinois State Board of Education and Illinois Federation of State Office Educators, Local 3236, 97-00497 found that these charges were not proven by a preponderance of the evidence and reversed the termination of Edwards on August 9, 1996 by ISBE. The findings by Arbitrator Grenig constitute either res judicata or collateral estoppel. . . ."

(Pl.'s Resp. to Def.'s 56.1 Statement.) By merely setting forth this statement for Edwards's answers to Miller's Local Rule 56.1 statement of facts, Edwards has effectively admitted those statements of fact. See, e.g., Federal Trade Commission v. Febre, 128 F.3d 530, 536 (7th Cir. 1997) (holding

6

that district courts may deem a defendant's facts admitted when the plaintiff does not properly admit or deny those facts in a statement pursuant to L.R. 56.1(b)(3), then numbered L.R. 12(N)). Furthermore, Edwards either admits or fails to properly deny the remaining statements of facts. Edwards fails to support any of his denials with citations to supporting evidence in the record which the court finds to be an admission. See Brown, 96 F. Supp. 2d at 814 (N.D.Ill. 2000) (quoting Schulz v. Serfilco, Ltd., 965 F.2d at 519 (7th Cir. 1992)); Jupiter Aluminum Corp, 225 F.3d at 871 (7th Cir. 2000); Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 673, 689 (7th Cir. 2000) (quoting McGuire v. United States Parcel Serv., 152 F.3d 673, 675 (7th Cir. 1998)). Therefore, all of Miller's L.R. 56.1 statement of facts are deemed admitted. The question now before the court is whether Edwards can establish the necessary discriminatory intent needed to support his § 1983 claims.

**B.     Establishing § 1983 Discriminatory Intent**

There are two ways Edwards can provide the required evidence needed to support his § 1983 claims and defeat Miller's motion for summary judgment. The first is by putting in enough evidence (whether direct or circumstantial) to raise a genuine issue concerning Miller's discriminatory intent in carrying out the challenged employment action. See, *e.g.*, Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994). The second is the so-called McDonnell Douglas method, the frequently used burden-shifting framework first set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).

**1.     Establishing Discriminatory Intent Directly.**

In order for the Edwards to establish that Miller had the necessary discriminatory intent directly, Edwards may use direct or circumstantial evidence. Under the direct method, "plaintiff must show either an acknowledgment of discriminatory intent by the defendant or its agents, or circumstantial evidence that provides the basis of an inference of intentional discrimination." Huff v. Uarco Inc., 122 F.3d 374, 380 (7th Cir. 1997) (citing Troupe v. May Dept. Stores Co., 20 F.3d 734, 736 (7th Cir. 1994). "Direct evidence is that which can be interpreted as an acknowledgment

7

of defendant's discriminatory intent." Kormoczy v. Secretary, United States Dep't of Hous., & Urban Development, 53 F.3d 821, 823 (7th Cir. 1995). Plaintiff must be able to show the proverbial "smoking gun" in order to prove discriminatory intent through direct evidence. Cavalieri-Conway v. L. Butterman & Assoc., 922 F.Supp. 995, 1003 (N.D. Ill. 1998).

Edwards may also use circumstantial evidence to show discriminatory intent directly. The types of circumstantial evidence that the Edwards can present are: "suspicious timing, ambiguous statements, behavior toward or comments directed at other [people] in the protected group, and other evidence from which an inference of discriminatory intent might be drawn . . ." Huff, 122 F.3d at 380.

Edwards has not provided any evidence of discriminatory intent either with direct evidence or circumstantial evidence. Therefore the court will determine if Edwards can establish discriminatory intent indirectly.

### 2. Establishing Discriminatory Intent Indirectly

In order for Edwards to show discriminatory intent indirectly he must use the McDonnell Douglas burden shifting analysis. See McDonnell Douglas Corp., 411 U.S. at 804 (1973). Under the McDonnell-Douglas method of proving discrimination, a plaintiff must first establish a prima facie case of discrimination. See Adusumilli v. City of Chicago, 164 F.3d 353, 362 (7th Cir. 1998). The Seventh Circuit has consistently held that "the prima facie case under McDonnell Douglas must be established and not merely incanted." See, e.g., Coco v. Elmwood Care, 128 F.3d 1177, 1178 (7th Cir. 1997). If a plaintiff is unable to establish a prima facie case of employment discrimination under McDonnell Douglas, an employer may not be subjected to a pretext inquiry. Peele v. Country Mut. Ins. Co., 288 F.3d 319, 327 (7th Cir. 2002) See, e.g., Contreras v. Suncast Corp., 237 F.3d 756, 761 (7th Cir. 2001); Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1090 (7th Cir. 2000); Coco, 128 F.3d at 1179; Plair v. E.J. Brach & Sons, 105 F.3d 343, 347 (7th Cir. 1997).

A prima facie case of race discrimination under § 1983 is predicated on the same elements as a race discrimination claim under Title VII. Murray v. Chicago Transit Authority, 252 F.3d 880, 887 (7th Cir. 2001). As plaintiff, Edwards had to produce evidence that: (1) he was a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated persons not in the protected class more favorably. Lalvani v. Cook County, 269 F.3d 785, 789 (7th Cir. 2001)(citing Taylor v. Canteen Corp., 69 F.3d 773, 779 (7th Cir. 1995). If Edwards succeeds in demonstrating that there is a prima facie case with evidentiary-quality materials, the burden shifts to Miller to articulate a legitimate business justification for the action. Russell v. Bd. of Trs., 243 F.3d 336, 341 (7th Cir. 2001) (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 508 (1993)). If Edwards cannot demonstrate a prima facie case the analysis end and his claims fail. Plair, 105 F.3d at 347 (citing Randle v. LaSalle Telecommunications, 876 F.2d 563, 569 (7th Cir. 1989)).

Based on the facts presented, the court finds that Edwards cannot meet the burden of establishing a prima facie case of discrimination, thus negating the need for a pretexual inquiry. The only clear cut element of a prima facie case that Edwards can establish is that he is a member of a protected class. Edwards has failed to offer any evidence that he was meeting his employer's performance expectations, that he suffered a sufficiently adverse action (keeping in mind that he was reinstated by ISBE and awarded all of his lost earnings and lost benefits except for one day), or that other similarly situated individuals were treated differently.

It is clear that Edwards was not meeting Miller's legitimate employment expectations. First, Edwards' involvement with NASCEHCY cost his employer $70,000.00, an amount that, if not for Edwards' representations, ISBE would not have been liable. Second, Edwards' work practices were seriously being questioned by Miller, and his prior supervisors. Edwards was repeatedly told that

9

he needed to improve his organizational and communication skills, which he never attempted to rectify. Furthermore, Edwards' actions involving a grantee of funding in Williamson County were brought into question. It was alleged that Edwards was attempting to influence the grantee's hiring practices and disbursement of funds. Edwards was also being questioned about accepting applications for funding after the proscribed deadline had passed. After extensive meetings with human resources, Miller brought ten charges against Edwards for failing to perform his job properly. These allegations clearly show that Edwards was not performing his job to the expectations of Miller, his supervisor.

Edwards suggests, in his answers to Miller's L.R. 56.1 statement of facts, that all of these issues are irrelevant, or if they are deemed to be relevant, that the arbitrators findings should be controlling on these issues. Edwards' logic is flawed for three reasons. First, as discussed previously, Edwards' answers to Miller's L.R. 56.1 statement are not in compliance with the Local Rules and are therefore deemed admitted. Second, these issues are relevant to Edwards' ability to prove a prima facie case for racial discrimination. Furthermore, the court is not bound by the arbitrator's rulings. Johnson v. University of Wisconsin-Milwaukee, 783 F.2d 59, 61-62 (7th Cir. 1986)

The general rule is that a prior arbitration should not, and indeed must not, be given preclusive effect in a subsequent § 1983 suit. McDonald v. City of West Branch, 466 U.S. 284, 290 (1986); see Young v. Easter Enters., 915 F.Supp. 58, 65-66 (S.D. Ind. 1995); see also Johnson, 783 F.2d at 61-62; Darden v. Illinois Bell Telephone, Co., 797 F.2d 497, 504 (7th Cir. 1986) (Title VII). Although both Alexander and McDonald involved the attempted use by the defendant of a prior arbitration against the plaintiff, the same policy reasons for not giving the arbitration preclusive effect apply when the plaintiff attempts to use a prior arbitration against the defendant. In either

10

context, arbitral fact-finding is not equivalent to judicial fact-finding, the arbitrator's expertise is "the law of the shop, not the law of the land," and the arbitrator's authority derives solely from contract so that he has no general authority to invoke public laws that conflict with the collective bargaining agreement. Johnson, 783 F.2d at 62 (citing Alexander, 415 U.S. at 56-57); see also McDonald, 466 U.S. 284, 290.

Edwards' reliance on the arbitrator's findings, or avoidance of the issues brought before the arbitrator, without providing any facts to support his position of alleged discrimination does not satisfy the burden of establishing a prima facie case. Edwards has provided no facts that support his allegations other than his own self-serving statements that he was performing his job satisfactorily. The only evidence Edwards attempts to proffer to prove his positions are his own statements and his previous evaluations. A plaintiff's own self-serving statements are not admissible as evidence. Edwards' evaluations were given to him by other supervisors in a time period before any of his alleged misdeeds occurred. The previous evaluations, which he does not provide to the court, are not relevant to the issue at hand. Edwards "cannot satisfy the satisfactory performance requirement by showing only that [his] performance was adequate for some period of time during [his] employment." Salvadori v. Franklin School District, No. 01-3829, –F.3d–, 2002 U.S.App.LEXIS 11689 *16-17(7th Cir. June 14, 2002) (citing Hong v. Children's Mem'l Hosp., 993 F.2d 1257, 1262 (7th Cir. 1993); Karazanos v. Navistar Int'l Transp. Corp., 948 F.2d 332, 336 (7th Cir. 1991). The only issue is whether Edwards was performing his job at a satisfactory level at the time he was fired. Edwards has produced no evidence to show that he was performing satisfactorily. Therefore, Edwards cannot the second crucial element necessary to prove his prima facie case of discrimination, that he was performing his job satisfactorily.

11

Furthermore, Edwards has proffered no evidence to substantiate the final two elements of his prima facie case. It is unchallenged that Edwards was terminated from his job, but he was hired back by ISBE receiving full compensation for lost wages and lost benefits, except for one day. Whether or not the loss of one days wage rises to the level of an adverse employment action has not been explored by either party. With no evidence before the court, the court declines to make a determination on this point. Perfunctory und undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived. Clay v. Holy Cross Hosp., 253 F.2d 1000, 1002 n.1 (7th Cir. 2001).

Finally Edwards offers no evidence to support his argument that Miller treated similarly situated persons not in the protected class more favorably. The only evidence Edwards attempts to offer in support of his accusations are his own self-serving statements. These self-serving statements are not enough to satisfy Edwards production burden in order to defeat a motion for summary judgment. Murray v. Chicago Transit Authority, 252 F.3d 880 (7th Cir. 2001).

Edwards has failed to present any evidence to support his claims for a violation of § 1983. Edwards cannot satisfy the burden of persuasion with the limited facts presented even when viewed in the best light possible. Miller's motion for summary judgment on Count I is granted.

C.  **Establishing a Title VII Claim**

In Count II of Edwards amended complaint, Edwards is attempting to assert a claim for relief based upon Title VII against his former supervisor, Miller. Although an employer under Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998), can be vicariously liable for its supervisors illegal conduct resulting in tangible employment action, Edwards is only attempting to sue Miller in his individual capacity. Edwards can not assert a Title VII claim against a supervisor. "Our case law

12

is clear that a supervisor cannot be held liable in his individual capacity under . . . . Title VII." See Silk v. City of Chicago, 194 F.3d 788, 798 (7th Cir. 1999); Gastineau v. Fleet Mortgage Corp., 137 F.3d 490, 493 (7th Cir. 1998); Geir v. Medtronic, Inc., 99 F.3d 238, 244 (7th Cir. 1996); Williams v. Banning, 72 F.3d 552, 555 (7th Cir. 1995); U. S. EEOC v. AIC Sec. Investigations, 55 F.3d 1276, 1280-1281 (7th Cir. 1995). Since Edwards has only brought suit against Miller in his individual capacity as a supervisor, he can not establish a claim for relief against Miller under Title VII. Therefore summary judgment is granted on Count II of Plaintiff's complaint.

Having granted Miller's motion for summary judgment on Count I, and Count II of Edwards complaint the court relinquishes its supplemental jurisdiction over the remaining state law claims brought by the Edwards. When the court grants summary judgment on all federal claims before trial, the general rule is that the court should relinquish supplemental jurisdiction over state law claims. See, e.g., Van Harken v. Chicago, 103 F.3d 1346, 1354 (7th Cir. 1997).

### III. CONCLUSION

For the foregoing reasons Defendant's **Federal Rule of Civil Procedure 56** motion for summary judgment is granted. All remaining state claims are dismissed.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, SR., District Judge

DATED: 6/24/02

13